Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 14, 2003          Decided January 16, 2004

No. 02-1038

WAREMART FOODS, *D/B/A* WINCO FOODS, INC.,
PETITIONERS

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 588,
INTERVENOR

———

On Petition for Review and Cross–Application
for Enforcement of an Order of the
National Labor Relations Board

———

*Mark S. Ross* argued the cause for petitioner. With him on the briefs were *Nick C. Geannacopulos* and *Samuel T. McAdam.*

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Anne Marie Lofaso*, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *David S. Habenstreit*, Attorney. *Richard A. Cohen*, Senior Attorney, entered an appearance.

*James B. Coppess* argued the cause for intervenor. With him on the brief were *Lynn K. Rhinehart*, *Peter J. Ford*, *Laurence S. Gold* and *Timothy Sears*.

Before: Edwards, Randolph, and Tatel, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Randolph.

Randolph, *Circuit Judge*: This petition for judicial review of an order of the National Labor Relations Board, and the Board's cross-petition for enforcement, turn on whether California law gives labor organizers a right to hand out leaflets in the privately-owned parking lot of a stand-alone grocery store. Because it was not clear where the Supreme Court of California stood on the subject, we certified two questions to it.[1] The California court refused to decide the questions. It has therefore fallen upon this court to determine the meaning of California law, in light of the First Amendment to the Constitution. We hold that under California law, union organizers have no right to distribute literature on a stand-alone grocery store's private property.

---

[1] *See Waremart Foods v. NLRB*, 333 F.3d 223, 227–28 (D.C. Cir. 2003):

> 1. Whether, under California law, WinCo had a right to prevent members of the public from engaging in expressive activity in the parking lot and walkways adjacent to its Chico grocery store?

> 2. Whether, if WinCo did have the general right to exclude members of the public from engaging in expressive activity on its private property, California law nevertheless permitted the union organizers to distribute literature there because they were involved in a labor dispute with the company?

I.

The facts are these. WinCo owns and operates a retail supermarket in Chico, California. *Waremart Foods*, 337 N.L.R.B. No. 41, 2001 WL 1699624, at *3 (Dec. 20, 2001). The store stands alone adjacent to its parking lot on a parcel of about 10 acres. *Id.* Customers can enter the store only from the parking lot. *Id.* Apart from allowing the Girl Scouts to sell cookies outside the store entrance shortly after it opened, WinCo has prohibited solicitors from operating on store premises and the Superior Court has twice issued injunctions to halt such activity. *See id.* at *4, *10; *Waremart, Inc. v. Progressive Campaigns, Inc.*, 102 Cal. Rptr. 2d 392, 393 (Cal. Ct. App. 2000), *review granted*, 105 Cal. Rptr. 2d 386 (Cal. 2001), *review dismissed and cause remanded*, 119 Cal. Rptr. 2d 697 (Cal. 2002).

In April 1999, union organizers entered the Chico store's parking lot and began distributing handbills to WinCo customers. 337 N.L.R.B. No. 41, 2001 WL 1699624, at *4. The handbills, which purported to come from an organization entitled "Mothers Against WinCo," urged shoppers not to patronize WinCo stores. *Id.* at *4–*5. The store manager spoke with one of the organizers, returned to the store and called the police. *Id.* at *5–*6. By the time the police arrived the handbilling was over for the day and the union organizers left. *Id.* at *6.

The Board ruled that WinCo violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), when it prohibited nonemployee union representatives from engaging in customer handbilling. 337 N.L.R.B. No. 41, 2001 WL 1699624, at *1, *11. In the Board's view, *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992), was inapposite because "under California property law, [WinCo] did not have a right to exclude union representatives from its property. *Sears, Roebuck & Co. v. San Diego District Council of Carpenters*, 25 Cal. 3d 317 (1979) [*Sears II*]." 337 N.L.R.B. No. 41, 2001 WL 1699624, at *1.

4

## II.

Unless California law is what the Board says it is, this case is indistinguishable from *Lechmere* and the Board's decision is in error. *See ITT Industries, Inc. v. NLRB*, 251 F.3d 995, 1000–03 (D.C. Cir. 2001). Lechmere maintained a no-solicitation policy at its store in the Lechmere Shopping Plaza in Connecticut. After union organizers began handing out leaflets in the shopping center's parking lot, which Lechmere jointly owned, the company's manager barred them from the property. In Connecticut, as elsewhere, a "conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with." RESTATEMENT (SECOND) OF TORTS § 168 (1965). *See New York New York, LLC v. NLRB*, 313 F. 3d 585, 589 (D.C. Cir. 2002). The organizers in *Lechmere* were therefore trespassers. The Supreme Court described them as such and held that Lechmere had not violated the National Labor Relations Act in excluding them from its property. 502 U.S. at 540; *see Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 217 n.21 (1994).

In this case, the Board ascertained California law from the 1979 decision in *Sears II*, a case on remand from the Supreme Court. *See Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters,* 436 U.S. 180 (1978). Union organizers picketed a Sears retail store in Chula Vista, California. The picketing occurred on Sears' property – on walkways leading to the store or in the store parking lot. Sears brought a trespass action against the union and the trial court granted a preliminary injunction. On appeal, the California court held that the National Labor Relations Act preempted state trespass law. *Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters*, 553 P.2d 603 (Cal. 1976). The Supreme Court reversed, holding that the labor preemption doctrine did not apply to the trespassory aspects of union picketing. 436 U.S. at 198–207. Although it referred throughout its opinion to the union organizers as trespassers, the Court dropped a footnote stating that it did not mean to foreclose the California court from considering, on remand, whether the organizers had committed a trespass under state law. *Id.* at 185 n.8.

In the meantime the California Supreme Court, in *Robins v. Pruneyard Shopping Ctr.*, 592 P.2d 341 (Cal. 1979), held that the California Constitution protected "speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned." *Id.* at 347. The court reasoned that shopping centers had become the functional equivalents of "miniature downtowns" and should be treated as public forums, from which expressive activity cannot be entirely excluded, although it may be regulated by reasonable time, place and manner restrictions. *Id.* at 345–48. (The Supreme Court so understood the decision and affirmed. *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 83–84 (1980).)

When the *Sears* case returned on remand, the California court for the first time focused on the "Moscone Act," Cal. Civ. Proc. Code § 527.3, a statute passed in 1975. The Act deprived state courts of jurisdiction to issue injunctions against persons distributing information about a labor dispute "in any place any person or persons may lawfully be" (§ 527.3(b)(1)) and against "[p]eaceful picketing or patrolling involving any labor dispute" (§ 527.3(b)(2)). Whether subsection (b)(2) meant that picketing as well as information distribution had to occur in a place where the person "may lawfully be" was unnecessary to decide, according to a three-Justice plurality. 599 P.2d at 681–82. Subsection (a) stated that the Act should be construed in accordance with "existing law." Existing California law, as the plurality saw it in 1979, "establishes that peaceful picketing on privately owned walks outside the employer's store is not subject to injunction." *Id.* at 682. The court then cited and discussed two of its decisions: *In re Lane*, 457 P.2d 561 (Cal. 1969); and *Schwartz-Torrance Inv. Corp. v. Bakery & Confectionery Workers' Union*, 394 P.2d 921 (Cal. 1964). The concurring opinion of one Justice, needed to make a majority, agreed that the injunction should be vacated, but disagreed that the state legislature " 'intended the courts to continue to follow (all) principles of California labor law extant at the time of the enactment of section 527.3.' " 599 P.2d at 687 (Newman, J.)

(quoting the plurality opinion at *id.* 685, but adding the "all"). No explanation followed.

*Lane* held that handbilling by a union representative on the private sidewalk of a stand-alone grocery store was protected by a now-discredited interpretation of the First Amendment to the Constitution.[2] *Lane* stated its holding exclusively in those terms: "the fact of private ownership of the sidewalk does not operate to strip the members of the public of their rights to exercise First Amendment privileges on the sidewalk at or near the place of entry to the establishment." 457 P.2d at 565. *Schwartz-Torrance* is not as clear: the court not only relied on the First Amendment but also suggested that a private shopping center might be treated as if it were a publicly-owned facility, apparently under state law. *See* 394 P. 2d at 923–25.

A later plurality opinion of the California Supreme Court read both *Lane* and *Schwartz-Torrance* as resting on the interpretation of the First Amendment to the Constitution

---

[2] In support, the *Lane* court relied not only on its 1964 decision in *Schwartz-Torrance*, but also on the intervening Supreme Court decision in *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza*, 391 U.S. 308 (1968). *Logan Valley* held that because a large, privately-owned shopping center served as the "functional equivalent" of a city's business district, labor picketing at the shopping center was protected under the First Amendment and could not be enjoined under state trespass laws. *Id.* at 317–20. In other words, the Court considered the private shopping center as if it were a traditional "public forum," a designation that had been reserved for government property in only three categories – streets, parks and sidewalks. *See Lovell v. Griffin*, 303 U.S. 444 (1938); *Hague v. CIO*, 307 U.S. 496 (1939); *Schneider v. State*, 308 U.S. 147 (1939); *see also* Frederick Schauer, *Principles, Institutions and the First Amendment*, 112 HARV. L. REV. 84, 97–98 & n.71 (1998).

Eight years after *Logan Valley*, the Court overruled the decision. *Hudgens v. NLRB*, 424 U.S. 507 (1976), held that the First Amendment protected only against governmental action and that the First Amendment therefore did not prevent an owner of a private shopping center from barring union members from picketing on its private property in violation of state trespass law. *Id.* at 518–21.

overruled in *Hudgens*, *see supra* note 2, rather than on California law. *See Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 29 P.3d 797, 809 & n.11 (Cal. 2001). Like *Sears II, Golden Gateway* did not produce a majority opinion. In the residential portion of a retail-apartment complex a tenants' association had been distributing a newsletter door to door. The owner sought to stop the distribution. When the tenants' association refused, claiming that the owner's action violated its right under state law to engage in free speech, the owner obtained a preliminary injunction. On appeal, a three-Justice plurality held that under the California Constitution, the association's free speech rights depended on the existence of state action and here there was none. 29 P.3d at 810. The court distinguished *Robins* on the ground that the shopping center there was the "functional equivalence . . . [of] a traditional public forum" and extended an "open and unrestricted invitation to the public to congregate freely." *Id.* at 809. The apartment complex, in contrast, is not open to the public; access is restricted to "residential tenants and their invitees." *Id.* at 810. Therefore the complex, "unlike the shopping center in *Robins*, is not the functional equivalent of a traditional public forum." *Id.*

Four opinions of intermediate appellate courts in California, three rendered before *Golden Gateway* and one after, have held that state law does not provide a free speech right to those seeking to engage in expressive activities on the private sidewalks or in the private parking lots of stand-alone supermarkets. *See Albertson's, Inc. v. Young,* 131 Cal. Rptr. 2d 721, 731–34 (Cal. Ct. App. 2003); *Young v. Raley's, Inc.,* 107 Cal. Rptr. 2d 172, 179–82 (Cal. Ct. App. 2001), *review granted,* 29 P.3d 795 (Cal. 2001), *review dismissed and cause remanded,* 45 P.3d 1162 (Cal. 2002); *Waremart, Inc.,* 102 Cal. Rptr. 2d 392 (Cal. Ct. App. 2000), *review granted,* 19 P.3d 1128 (Cal. 2001), *review dismissed and cause remanded,* 5 P.3d 1161 (Cal. 2002); *Trader Joe's Co. v. Progressive Campaigns, Inc.,* 86 Cal. Rptr. 2d 442, 448–49 (Cal. Ct. App. 1999).[3] The court of appeals in *Albertson's*, the case decided

---

[3] Two of the cases – *Young* and *Waremart* – have been "depublished" because the California Supreme Court first granted review

after *Golden Gateway*, reasoned that a supermarket and its private surroundings could not be equated with a public forum under *Robins* because there were "no enclosed walkways, plazas, courtyards, picnic areas, gardens, or other areas that might invite the public to congregate" there. 131 Cal. Rptr. 2d at 733.

## III.

In light of these developments, we expressed uncertainty in our earlier opinion, *Waremart Foods,* 333 F.3d at 227, about whether *Sears II* represented current California law. We now hold that it does not and that the National Labor Relations Board erred in relying on that decision.

*Sears II* recognized a right to engage in labor picketing in a private parking lot and on private sidewalks outside a stand-alone store. The plurality opinion said its decision rested on the Moscone Act's special protection for labor activity, not on the State Constitution.[4] 599 P.2d at 683 n.5. It was therefore irrelevant to the plurality where the store was located or whether it fit within the rationale of *Robins. Id.* at 687. As WinCo argued before us and before the Board, the *Sears II* plurality opinion cannot reflect current California law because the rule it embraces violates the First Amendment to the Constitution. In *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92 (1972), a local ordinance prohibited picketing in the vicinity of schools during school hours; in *Carey v. Brown*, 447 U.S. 455 (1980), a state law prohibited

---

but then "dismissed review" without deciding the case. *See* CALIFORNIA RULES OF COURT § 976(d); Stephen R. Barnett, *Making Decisions Disappear: Depublication and Stipulated Reversal in the California Supreme Court*, 26 LOY. L.A. L. REV. 1033 (1993). Given this procedure, unique to California, we do not rely on those opinions.

[4] The California Constitution's free speech provision provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." CAL. CONST. Art. I, § 2.

picketing of residences. Both the ordinance and the state law contained an exemption for labor picketing. In both cases the Supreme Court held that the exemption constituted content discrimination in violation of the First Amendment. *See Mosley*, 408 U.S. at 95 ("The central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter."); *Carey*, 447 U.S. at 466 (rejecting the idea that "labor picketing is more deserving of First Amendment protection than are public protests over other issues"). *Mosley* and *Carey* thus render unconstitutional the principle on which the *Sears II* plurality based its decision. We believe that if the meaning of the Moscone Act came before the California Supreme Court again, it would either hold the statute unconstitutional or construe it to avoid unconstitutionality. *See, e.g.*, *Harrott v. County of Kings*, 25 P.3d 649, 657 (Cal. 2001) ("[A] statute must be interpreted in a manner, consistent with the statute's language and purpose, that eliminates doubts as to the statute's constitutionality."). Thus, under California law labor organizing activities may be conducted on private property only to the extent that California permits other expressive activity to be conducted on private property.

The supplemental briefs of the intervenor union and the Board no longer defend the Board's reliance on *Sears II*. (The union does not even cite *Sears II*.) Board counsel now asks us to uphold the Board on the basis of the California Supreme Court's 1969 decision in *In re Lane*, 457 P.2d 561. The facts of *Lane* are comparable to those presented here, but as we have discussed, *supra* p. 6, the decision did not rest on California law. It rested instead on an interpretation of the First Amendment, an interpretation the Supreme Court later overruled in *Hudgens v. NLRB*, 424 U.S. at 518–21. *See supra* note 2. Two intermediate California appellate courts have recognized, in alternative holdings, that *Lane* rested on federal law, since discredited. *See Albertson's*, 131 Cal. Rptr. 2d at 735 (*Lane* "based on federal Constitution and federal precedent," not State Constitution); *Trader Joe's*, 86 Cal. Rptr. 2d at 450 ("[T]he *Lane* court based its holding on federal Supreme Court precedent which was subsequently

overruled."); *see also Golden Gateway*, 29 P.3d at 809 n.11 (describing *Lane* as relying on First Amendment and *Logan Valley*) (plurality opinion); *but see Costco Cos., Inc. v. Gallant*, 96 Cal. Rptr. 2d 344, 355 n.1 (Cal. Ct. App. 2002) (dictum).

The Ninth Circuit, in *NLRB v. Calkins*, 187 F.3d 1080 (9th Cir. 1999), held that an employer committed an unfair labor practice when it interfered with union organizers picketing and handbilling on the privately owned walkway and parking lot outside its grocery store. The court of appeals believed that in light of *Sears II* and *Lane*, the union organizers had a right under California law to engage in those activities on the store's property. *Id.* at 1090–91. For the reasons just mentioned, we think neither case reflects current California law.

Nor do we believe that *Robins v. Pruneyard Shopping Ctr.*, 592 P.2d 341 (1979), gave the union organizers a right to conduct activities on WinCo's private property. The case dealt with expressive activity in a privately-owned shopping center. The California Supreme Court's rationale – that the shopping center should be treated as a traditional public forum because it had become the functional equivalent of a town center, *id.* at 345–48 – cannot be applied to WinCo's grocery store. As *Albertson's* and *Trader Joe's* hold, free-standing grocery stores are not miniature downtowns. *Albertson's*, 131 Cal. Rptr. 2d at 732–34 (walkway at entrance to Albertson's grocery store, unlike shopping center in *Pruneyard*, is not a traditional public forum); *Trader Joe's*, 86 Cal. Rptr. 2d at 448 ("In contrast to *Pruneyard*, . . . [Trader Joe's] contains no plazas, walkways or central courtyard where patrons may congregate and spend time together."). As here, people went to Albertson's and Trader Joe's solely to shop; the property owners invited members of the public for that purpose alone, not "to meet friends, to eat, to rest, to congregate, or to be entertained at its premises." *Albertson's*, 131 Cal. Rptr. 2d at 732; *see also Trader Joe's*, 86 Cal. Rptr. 2d at 448.

Given the absence of any controlling precedent from the California Supreme Court, we will follow these intermediate appellate decisions. Here, as in a diversity suit, if "an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT & T Co.*, 311 U.S. 223, 237 (1940); *see also Hicks v. Feiock*, 485 U.S. 624, 629–30 (1988); *Tax Analysts v. IRS*, 117 F.3d 607, 614 (D.C. Cir. 1997).

The Board's and union's remaining argument is – as WinCo summarizes it – that "any individual or group that has a dispute with the property owner is exempt from the general trespass laws of California." Petitioner's Supp. Brief at 4. *Lane* and *Sears II* suggested this as a rule, *see Lane*, 457 P.2d at 563–64, and *Sears II*, 599 P.2d at 683, but no post-*Pruneyard* decision by the California appellate courts has adopted it, although one court suggested it in dicta. *See Costco*, 96 Cal. Rptr. 2d at 355 n.1. Apart from the question whether such a rule would amount to content discrimination,[5] in violation of the First Amendment or the California Constitution, the rule is contrary to the decisions of California courts holding that abortion protesters have no right under State law to engage in expressive activities on the privately owned parking lots and walkways of medical clinics providing abortion services. *See, e.g.*, *Allred v. Harris*, 18 Cal. Rptr. 2d 530 (Cal. Ct. App. 1991).

\* \* \* \*

We hold that the union organizers had no right under California law to engage in handbilling on the privately-owned

---

[5] *Glendale Associates, Ltd. v. NLRB*, 347 F.3d 1145 (9th Cir. 2003), held that a California shopping center's rule – which prohibited persons from distributing literature naming a tenant except when the persons are in a labor dispute with the tenant or when the literature is commercial in nature – was content-based and therefore violated California's free speech clause, despite the absence of any state action.

parking lot of WinCo's grocery store. The case is therefore controlled by the Supreme Court's decision in *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992). Accordingly, WinCo's petition for judicial review is granted and the Board's cross-petition for enforcement of its order is denied.

*So ordered.*